UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL BELBIN,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | No.  2:13-cv-02657-AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   PROCEDURAL BACKGROUND

Plaintiff, born December 13, 1983, applied on September 2, 2010 for DIB and SSI, alleging disability beginning March 19, 2003. Administrative Record ("AR") 144, 147.  Plaintiff alleged he was unable to work due to his bipolar disorder, manic depression, stomach, back and neck pain, bowel problems, insomnia, fatigue, intense anger, vertigo, sleep apnea, and posttraumatic stress disorder. AR 187.  In a decision dated August 30, 2012, the ALJ determined

that plaintiff was not disabled. AR 32. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. Born on December 13, 1983, the claimant had not attained age 22 as of March 19, 2003, the alleged onset date.
>
> 2. The claimant has not engaged in substantial gainful activity since March 19, 2003, the alleged onset date.
>
> 3. The claimant has the following severe impairments: learning disorder, borderline intellectual functioning, bipolar disorder, and posttraumatic stress disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, repetitive tasks. He can interact with supervisors, but can occasionally work with coworkers and the public. He may initially require additional instructions to learn tasks but is able to learn simple, repetitive tasks. The claimant is able to maintain regular attendance. He cannot work in a competitive environment with quotas or pacing.
>
> 6. The claimant has no past relevant work.
>
> 7. The claimant was born on December 13, 1983 and was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has limited education and is able to communicate in English.
>
> 9. Transferability of job skills is not an issue because the claimant does not have past relevant work.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 19, 2003, through the date of this decision.

AR 16–32.

////

////

2

## II. FACTUAL BACKGROUND

Born on December 13, 1983, plaintiff was 19 years old on the alleged onset date of disability and 28 at the hearing before the ALJ. AR 39, 144. Plaintiff has some high school education. AR 47. He has no past relevant work. AR 31.

## III. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to consider all of plaintiff's impairments in assessing plaintiff's RFC and, as a result, posed an incomplete hypothetical to the vocational expert; (2) the ALJ improperly evaluated the opinions of plaintiff's treating physicians; and (3) the ALJ failed to develop the record with regard to the time period between December 2010 and January 2011.

## IV. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## V.   ANALYSIS

### A.   RFC Assessment

Plaintiff contends the ALJ failed to include all of plaintiff's impairments in determining his residual functional capacity.  In particular, plaintiff asserts the ALJ failed to account for limitations suggested by Drs. Terrini and Daigle.  In determining a claimant's RFC, an ALJ must assess all the evidence to determine what capacity the claimant has for work despite her impairments.  See 20 C.F.R. §§ 404.1545(a), 416.945(a).  The court will affirm the ALJ's determination of plaintiff's RFC if the ALJ applied the proper legal standard and her decision is supported by substantial evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). An examining physician's opinion alone constitutes substantial evidence if it rests on that physician's own independent examination.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d at 747, 756 (9th Cir. 1989).  However, the ALJ need only include the limitations that he or she finds to exist.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, repetitive tasks.  He can interact with supervisors, but can occasionally work with coworkers and the public.  He may initially require additional instructions to learn tasks but is able to learn simple, repetitive tasks.  The claimant is able to maintain regular attendance.  He cannot work in a competitive work environment with quotas or pacing.

AT 20.  In making this determination, the ALJ took into account those limitations for which there was support in the record, including, to varying degrees, the medical opinions of Drs. Regazzi, Daigle, Richwerger, Bible, and Terrini.  AR 22–31.

////

Dr. Michelina Regazzi performed a psychological evaluation on January 22, 2002, when plaintiff was 18 years old. AR 477. In the course of the evaluation, plaintiff's performance on the Vineland Adaptive Behavior test revealed that he communicated at an age-equivalency of 8 years old, had the daily living skills of a 12 year old, and the social skills of a 13 year old. AR 479–80. His adaptive behavior composite was that of an 11 year old. AR 480. Dr. Regazzi diagnosed plaintiff with a learning disorder, borderline intellectual functioning, and a Global Assessment Functioning ("GAF") of 68.[1] AR 481. She opined that plaintiff would have the following capabilities and limitations:

> Paul is capable of understanding and carrying out simple and two-part instructions. He is capable of communicating appropriately with others. He is capable of interacting appropriately with others at least in a one-on-one setting. He has a relative strength in vocabulary, practical knowledge, and factual knowledge. He seems motivated to do well and would benefit from a job training program.
>
> Paul cannot be expected to learn at the rate of his peers. He would have difficulty performing tasks at length without supervision. He would have difficulty understanding and carrying out complex tasks.

AR 481–82. The ALJ concluded that Dr. Regazzi's opinion was supported by the medical evidence and consistent with her own objective findings. AR 24.

Dr. Bradley Daigle performed a psychiatric evaluation of plaintiff on June 27, 2003. AR 266. Dr. Daigle noted that plaintiff has had lifelong learning and performance problems. AR 266. He stated that plaintiff is "essentially functionally illiterate and has been said to function in the borderline intellectual range" (AT 266) and that "in general, he may be able to make some progress in a sheltered situation" (AT 270). Dr. Daigle diagnosed plaintiff with learning disorder,

////

---

[1] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A 61-70 GAF indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

borderline intellectual functioning, and assessed his global functioning at 60.[2]  AR 270.  He opined that plaintiff is slightly limited in his ability to: understand, remember, and carry out simple 1-or 2-step job instructions; relate and interact with supervisors, co-workers and the public; and adapt to the stresses common to a normal work environment.  AR 271.  Dr. Daigle also opined that plaintiff is moderately limited in his ability to: follow detailed and complex instructions; maintain concentration, attention, persistence and pace; and associate with day-to-day work activity, including attendance and safety.  AR 271.  Plaintiff contends the ALJ's RFC assessment failed to account for Dr. Daigle's opinion that plaintiff may be able to make some progress in a sheltered situation with limited expectations.  However, the ALJ's limitation that plaintiff not work in a competitive work environment with quotas or pacing reasonably accounts for this portion of Dr. Daigle's opinion.

Dr. David Richwerger performed a psychological evaluation of plaintiff on December 29, 2004.  AR 277.  Dr. Richwerger also noted plaintiff's learning problems.  AR 277.  He performed several tests, including the Bender-Gestalt, II, Trails A and Trail B, the Wechsler Adult Intelligence Scale, III (WAIS-III) and the Wechsler Memory Scale, III.  AR 277.  Plaintiff received a score of 66 on the Bender-Gestalt-II and a percentile rank of 1.  AR 280.  With respect to Trails A and Trails B, plaintiff scored within normal limits and borderline range, respectively.  AR 280.  As to the Wechsler Adult Intelligence Scale, III, plaintiff had a verbal IQ of 86, a performance IQ of 77 and full scale IQ score of 80.  AR 280.  These placed plaintiff in the 18th, 6th and 9th percentiles, respectively.  AR 280.  Dr. Richwerger noted that plaintiff scored at the higher end of the borderline range with his verbal skills somewhat better than his nonverbal skills.  AR 280.  With regard to the Wechsler Memory Scale, III, plaintiff scored in the borderline range on tasks of concentration and memory.  AR 281.  Dr. Richwerger diagnosed plaintiff with adjustment disorder with mixed disturbance of emotions and conduct, borderline intellectual functioning, and antisocial personality traits.  AR 281.  He further noted that there were

---

[2]  51 to 60 GAF indicates "[moderate] symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM IV-TR at 34.

employment-related concerns and assessed plaintiff's GAF was 65[3] at the time of the exam. AR 281. As to plaintiff's functional assessment, Dr. Richwerger opined as follows:

> The claimant appears to have a moderate impairment in his ability to perform detailed and complex tasks.
>
> The claimant appears to have no impairment in his ability to perform simple and repetitive tasks.
>
> The claimant appears to have slight impairment in his ability to perform work activities on a consistent basis.
>
> The claimant appears to have no impairment in his ability to perform work activities without special supervision.
>
> The claimant appears to have slight impairment in his ability to complete a normal workday or workweek without interruption from a psychiatric condition.
>
> The claimant appears to have slight impairment in his ability to understand and accept instructions from supervisors.
>
> The claimant appears to have slight impairment in his ability to interact with coworkers and the public.
>
> The claimant appears to have no impairment in his ability to maintain regular attendance in the workplace.
>
> The claimant appears to have slight impairment in his ability to deal with the usual stresses encountered in competitive work.
>
> The claimant appears to be capable of managing his own funds.

AR 281–82.

Dr. Charlotte Bible performed a psychiatric review on January 18, 2005. AR 283. Dr. Bible diagnosed plaintiff with adjustment disorder and borderline intellectual functioning. AR 283. She opined that plaintiff was moderately restricted in his daily activities; experienced moderate difficulties in maintaining social functioning; had moderate difficulties in maintaining, concentration, persistence, or pace; and would not experience any episodes of decompensation of an extended duration. AR 290. On that same day, Dr. Bible completed a mental residual functional capacity assessment. AR 293. She opined that plaintiff was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain

---

[3] See supra footnote 1.

attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.  AR 293–94.

On December 3, 2010, Dr. Steven J. Terrini performed a comprehensive psychiatric evaluation of plaintiff.  AR 345.  Dr. Terrini diagnosed plaintiff with bipolar disorder, chronic posttraumatic stress disorder, panic disorder, and had features of antisocial personality disorder.  Dr. Terrini assessed plaintiff's global functioning was 54[4] at the time.  AR 348.  Dr. Terrini assessed plaintiff's functional limitations as follows:

> The claimant may be capable of managing his funds, although it is likely his arithmetic skills are somewhat below average.
>
> The claimant should be able to perform simple and repetitive tasks.  He may have some trouble with detailed and complex tasks due to his psychiatric symptoms.
>
> The claimant should be able to accept instructions from supervisors.  He may have trouble working with coworkers and the public, as he claimed he does not trust other people.
>
> The claimant may have trouble performing work activities on a consistent basis without special or additional instruction due to his psychiatric symptoms.
>
> The claimant may be able to maintain regular attendance in a workplace, although he has a minimal work history.  He is likely mildly to moderately impaired in his ability to complete a normal workday and workweek without interruptions from a psychiatric condition.
>
> The claimant is likely moderately impaired in his ability to deal with the stress encountered in a competitive workplace.

AT 349.  Plaintiff asserts the ALJ failed to account for Dr. Terrini's opinion with regard to plaintiff's ability to perform work activities without special or additional instruction.  However,

---

[4] See supra footnote 2.

1  the ALJ stated that plaintiff might initially require additional instructions to learn simple,
2  repetitive tasks. AR 20. This finding reasonably accounts for Dr. Terrini's opinion regarding
3  plaintiff's need for additional instruction. Plaintiff also contends the ALJ failed to account for Dr.
4  Terrini's opinion regarding plaintiff's work-attendance limitations. However, plaintiff does not
5  present a full picture of Dr. Terrini's opinion with respect to these limitations. As stated above,
6  Dr. Terrini opined that plaintiff may be able to maintain regular attendance in a workplace, which
7  seems to contradict the opinion that plaintiff would miss work because of his psychiatric
8  condition. See AR 20.

9  As demonstrated above, the ALJ reasonably accounted for the limitations expressed in the
10  opinions of Drs. Regazzi, Daigle, Richwerger, Bible, and Terrini. For the reasons stated, the
11  ALJ's RFC assessment was supported by substantial evidence.

12  B.   Medical Opinions

13  Plaintiff contends the ALJ erred in evaluating the opinions of his treating physicians.
14  There are three types of physicians relevant to disability determinations: treating physicians,
15  examining physicians, and nonexamining physicians. "If a treating doctor's opinion is not
16  contradicted by another doctor (i.e., there are no other opinions from examining or nonexamining
17  sources), it may be rejected only for 'clear and convincing' reasons supported by substantial
18  evidence in the record." See Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th
19  Cir.2008); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). "If the ALJ rejects a treating or
20  examining physician's opinion that is contradicted by another doctor, he must provide specific,
21  legitimate reasons based on substantial evidence in the record." Valentine v. Comm'r of Soc. Sec.
22  Admin., 574 F.3d 685, 692 (9th Cir.2009); Ryan, 528 F.3d at 1198.

23  "[T]he medical opinions of a claimant's treating physicians are entitled to special weight."
24  Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988). If the ALJ disregards a treating physician's
25  opinion, the ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting
26  clinical evidence, stating his interpretation thereof, and making findings." Id. (quoting Cotton v.
27  Bowen, 799 F.2d 1403, 1408 (9th Cir.1986)). Moreover, "[t]he ALJ need not accept the opinion
28  of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." Esposito v. Astrue, 2012 WL 1027601, CIV S-10-2862-EFB at *3 (E.D.Cal. Mar. 26, 2012).

A nonexamining physician's function is to read medical evidence in a claimant's case records, decide whether or not the claimant's impairments meet or equal the Listings, and determine the claimant's Residual Functional Capacities. 20 C.F.R. § 416.927(e)(1)(i). Because nonexamining physicians do not have the benefit of hearing the claimant's complaints of pain, their opinions as to claimant's pain are of "very limited value." Penny v. Sullivan, 2 F.3d 953, 957 (9th Cir. 1993).

Shirley Rigg, a family nurse practitioner, treated plaintiff with respect to several physical illnesses from July 2011 to June 2012. AR 524–535. Rigg wrote a note, dated March 23, 2012, stating that plaintiff "suffers from significant mental health issues which prevent him from being gainfully employed." AR 484. Rigg also stated that plaintiff suffered from bipolar disorder and borderline personality disorder, and that he would be unemployable from March 23, 2012 to March 23, 2013. AR 484. The ALJ did not recognize the signature on the note but addressed the opinion nonetheless, giving it little weight because it "conflicts with every acceptable medical source opinion in the medical evidence of record and with objective findings including the results of two separate batteries of psychometric tests." AR 30.

Plaintiff contends that Rigg's note, suggesting plaintiff was "unemployable" due to bipolar disorder, does not conflict with all the medical source opinions. Plaintiff cites his treatment at El Hogar Community Services, El Hogar's Guesthouse Services Program, Guest House Homeless Services program, and at the Primary Care Clinic. Plaintiff asserts that these medical sources, including the opinion of consultative examiner Dr. Terrini, all diagnosed plaintiff with bipolar disorder and thus Dr. Rigg's note is consistent with medical source opinions. This argument misses the mark. The ALJ rejected Rigg's note with regard to the
////

opinion that plaintiff was "unemployable," not with respect to the diagnoses given in the note. AR 30.

Plaintiff also contends that the ALJ failed to articulate clear and convincing reasons for rejecting Rigg's opinion, or, in the alternative, failed to articulate specific and legitimate reasons for doing so. As an initial matter, Rigg's opinion regarding plaintiff's employability is contradicted by Drs. Regazzi, Daigle, Richwerger, and Terrini. All opined that plaintiff could perform simple jobs albeit with limitation, and could with some difficulty carry out simple instructions from his supervisors. See e.g., AR 481–82 (Dr. Regazzi's opinion that plaintiff could perform simple tasks); 271 (Dr. Daigle describing plaintiff's work limitations as slight or moderate); 281–82 (Dr. Richwerger describing plaintiff's mental impairments as nonexistent, slight or moderate); 349 (Dr. Terrini opining that plaintiff could perform simple and repetitive tasks and could accept instructions from supervisors). In light of the conflict, the ALJ was required to provide specific and legitimate reasons for rejecting Rigg's opinion.

As noted by the Commissioner, Rigg was a family nurse practitioner who treated plaintiff for his physical ailments. She did not conduct psychological testing or a psychiatric evaluation, nor did she provide treatment for plaintiff's mental health concerns. The several mental health professionals who evaluated plaintiff with regard to his mental impairments opined that plaintiff had the capacity to perform simple work. Relying on the opinions of those mental health professionals and their objective findings, the ALJ gave Rigg's opinion little weight because it contradicted the opinions and objective findings of the appropriate specialists. AR 22–31. These are specific and legitimate reasons for rejecting Rigg's opinion, and are supported by substantial evidence. There was no error in the ALJ's evaluation of the medical opinions.

C.      Duty to Develop the Record

Plaintiff contends the ALJ failed to develop the record with respect to plaintiff's mental health treatment records from December 2008 to January 2011. The ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "The ALJ must be 'especially diligent' when the claimant is unrepresented . . . ." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). The duty to develop

the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150. "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." McLeod, 640 F.3d at 885. "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150 (citations omitted). Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Sec'y of Health and Human Servs., 939 F.2d 680, 682 (9th Cir.1991). The ALJ's decision may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of said failure. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.1991).

       Plaintiff argues that the ALJ had a duty to order mental health treatment records from the jail and from Genesis counseling, because there are references in plaintiff's other treatment notes to treatment provided by those entities. Specifically, other records reflect that plaintiff's best medication response to his borderline personality disorder occurred when he was in jail receiving Paxil and Trazadone (AT 359), and that he was referred to Genesis counseling (AT 435, 438).

       The ALJ's duty to further develop the record with respect to these records was not triggered. The ALJ found that the medical evidence and opinions were consistent with each other over the years. AT 30 ("All recognized the claimant's history of learning disability, borderline intellectual functioning, and limitations of concentration, persistence or pace and thus all limited the claimant to the performance of simple repetitive tasks."). This consistency among the medical opinions demonstrates that the record was not ambiguous and that the ALJ could conduct an appropriate inquiry on the record before her. Cf. Smolen, 80 F.3d 1288 (the ALJ had a duty to augment the record when the basis of the opinion of plaintiff's treating physician was unknown to

the ALJ); Armstrong v. Commissioner of Social Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) (the ALJ had a duty to call a medical expert to help determine the onset date of disability); Tonapetyan, 242 F.3d at 1150 (the ALJ was required to develop the record when opinion of non-examining expert, upon which the ALJ heavily relied, was equivocal and suggested a more detailed report from plaintiff's treating psychiatrist).  Ultimately, the ALJ concluded that the medical records and medical opinions supported the RFC assessment.  AT 30.

Furthermore, plaintiff has not shown prejudice or unfairness resulting from the absence of these records.  The record referencing plaintiff's mental health treatment in jail state that plaintiff experienced stability from his symptoms when he was receiving Paxil and Trazadone.  AT 359. These records support the ALJ's conclusion that plaintiff's "psychological symptoms were controlled with compliance with psychiatric medications."  AT 30.  Plaintiff did not state what the records from Genesis counseling, if they even existed, would have stated or how those records would have materially impacted the disability decision.  See Smolen, 80 F.3d at 1288. Accordingly, the ALJ did not fail to develop the record with respect to the time period between December 2008 and January 2011.

## VI. CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is granted; and

3. Judgment is entered for the Commissioner.

DATED: March 2, 2015

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE